UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF DAVID CONROY, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> JUSTIN CIMINO, et al., <br><br> Defendants. | Civ. No. 18-cv-14184 (RBK) (AMD) <br><br> **OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiffs, the Estate of David Conroy by and through its administrator, Jenney Ferguson, and Ms. Ferguson in her own right's (collectively "Plaintiff") Complaint. (ECF No. 1). Presently before the Court is Defendants' motion for summary judgment. (ECF No. 37). Plaintiff filed an Opposition, (ECF No. 41), and Defendants did not file a reply. For the reasons set forth below, the Court will deny the motion for summary judgment.

**I.     BACKGROUND**

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in earlier Opinions in *Conroy I*, (*Estate of David Conroy v. Cumberland County*, No. 17-7183, ECF Nos. 42, 62, 89, 116), the Court will only state those facts necessary to address the instant Motion.

This case arises from the suicide of David Conroy, during his detention at the Cumberland County Jail. On September 19, 2017, Plaintiff filed the complaint in *Conroy I*, naming as defendants, Cumberland County, Warden Richard Smith, former Warden Robert Balicki, CFG Health Systems, and John Does for violations of Mr. Conroy's constitutional rights and various

state law claims. *Estate of Conroy by & Through Ferguson v. Cumberland Cty.*, No. 17-7183, 2019 WL 3761129, at *1 (D.N.J. Aug. 8, 2019).

As set forth in *Conroy I*:

> Former Warden Balicki filed a motion to dismiss on September 28, 2017. On February 20, 2018, CFG Health filed a motion for summary judgment on Plaintiff's medical malpractice/professional negligence claims against CFG Health.
>
> The Court granted Balicki's motion to dismiss on May 31, 2018. Plaintiff was permitted to file an amended complaint with their claims against Balicki, but they declined to do so even after the Court granted an extension of time to file the amended complaint. As such, Balicki is now dismissed with prejudice from the case.
>
> CFG's motion for summary judgment was denied in September 2018. The Court also denied CFG Health's motion for reconsideration. While CFG Health's motion was pending, Cumberland County and Warden Smith filed a motion for partial summary judgment on Plaintiffs' state tort claims. The Court dismissed the motion without prejudice based on a failure to comply with Rule 56.1.

*Id*. (citations omitted).

Thereafter, Cumberland County and Warden Smith refiled their motion for partial summary judgment, and this Court found that Plaintiff had not substantially complied with the New Jersey Tort Claims Act, N.J. Stat. § 59:1-1 *et seq. Id*. As a result, the Court granted summary judgment as to Plaintiff's state tort claims against Cumberland County and Warden Smith. *Id*.

During the pendency of those motions, on June 20, 2018, Plaintiff requested a 30-day extension to file a motion for leave to amend, to add Officers Justin Cimino and Nicholas Gomez, as defendants in *Conroy I*. (*See Conroy I*, No. 17-7183, ECF No. 50). According to Plaintiff's counsel, he requested that extension because the criminal prosecution of Officers Cimino and Gomez had delayed discovery as to their involvement in Mr. Conroy's death. (*Id*.). Further, counsel asserted, "[r]ather than rush to file an amended complaint without the benefit of the

discovery that was requested, we are requesting the . . . extension, in order to file a factually supported amended complaint." (*Id.*).

Judge Simandle considered those representations and granted counsel's request, extending Plaintiff's time to amend to July 30, 2018. (*Id.*). There were no further extensions of time to amend in *Conroy I*. Contrary to counsel's representations, he never filed a motion to amend or an amended complaint in *Conroy I*, and requested no further extensions of time to amend.

Instead, on September 21, 2018, Plaintiff's counsel filed the instant Complaint, under a new docket number ("*Conroy II*"), naming Officers Cimino and Gomez as Defendants. (ECF No. 1). Both complaints involve the suicide of Mr. Conroy at the Cumberland County Jail.

According to Plaintiff's counsel, he "made the decision to file an independent complaint against Defendants . . . Cimino and Gomez based on the interest of judicial economy and to not further delay the progression of *Conroy I*." (ECF No. 41, at 9). On November 26, 2018, Judge Donio consolidated *Conroy I* and *II* for discovery purposes only. (ECF No. 6).

In *Conroy I*, Plaintiff filed a motion to consolidate the cases for all purposes, (*Conroy I*, No. 17-7183, ECF No. 124), and in *Conroy II*, Defendants Cimino and Gomez filed a similar motion to consolidate. (ECF No. 30). Cumberland County opposed the motion to consolidate in each case.[1] The motions to consolidate remain pending.

Now before the Court is Defendant Cimino and Gomez's (hereinafter "Defendants") motion for summary judgment. (ECF No. 37). Defendants contend that the doctrines of judicial and equitable estoppel merit summary judgment in this matter. Plaintiff filed an Opposition, (ECF No. 41), and Defendants did not file a reply.

---

[1] The County is a Third-Party Defendant and Cross-Claimant in *Conroy II*.

3

## II.     STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton*, 572 U.S. at 657.  The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist).  The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257.  Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

## III.     DISCUSSION

### A. Judicial Estoppel

First, Defendants contend that Plaintiff "should be judicially estopped from prosecuting *Conroy II*." (ECF No. 37-2, at 6). For reasons that are unclear, Defendants have framed their arguments around an overruled Eleventh Circuit case's test for judicial estoppel. (*Id.* (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002), *overruled by Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017))).

In the Third Circuit, judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," prevents a litigant from asserting a position inconsistent with one that she previously asserted in the same or in a previous proceeding. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.*

Judicial estoppel is appropriate if: (1) the party is asserting a position that is irreconcilably inconsistent with one she previously asserted in the same or in a previous proceeding; (2) the party changed her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of estoppel is tailored to address the affront to the court's authority or integrity. *See Danise v. Saxon Mortg. Servs. Inc*, 738 F. App'x 47, 50 (3d Cir. 2018) (citing *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir. 2001)); *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319–20 (3d Cir. 2003).

Regarding the first element, "[i]t is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts." *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 229 (3d Cir. 1998).

Additionally, judicial estoppel does not require that the party actually derive a benefit from asserting inconsistent positions. *Ryan,* 81 F.3d at 361. Though whether the party benefitted "may be relevant insofar as it evidences an intent to play fast and loose with the courts," the fact that no benefit arose from the original position will not prevent the application of judicial estoppel. *Id.*

As to the third element, application of the doctrine must be "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Krystal*, 337 F.3d at 319–20.

With those principles in mind, as Defendants have failed to argue for judicial estoppel under the correct standard, that reason alone is sufficient to deny summary judgment on this ground.[2] Nevertheless, the Court will also deny this ground on the merits.

Turning to the first element, the Court finds that Plaintiff's filing of *Conroy II* is "irreconcilably inconsistent" with his request for an extension of time to amend in *Conroy I*. *Id*. As discussed above, Plaintiff's counsel requested the extension because the criminal prosecution of Defendants had delayed discovery as to their involvement in Mr. Conroy's death. (*See Conroy I*, No. 17-7183, ECF No. 50).

Further, counsel asserted, "[r]ather than rush to file an amended complaint without the benefit of the discovery that was requested, we are requesting the . . . extension, in order to file a factually supported amended complaint." (*Id.*). Judge Simandle relied on those representations and granted counsel's request, extending Plaintiff's time to amend to July 30, 2018. (*Id.*). Plaintiff's counsel, however, never filed a motion to amend or an amended complaint in *Conroy I*, and requested no further extensions of time to amend. Plainly, by not filing a motion to amend in

---

[2] In her Opposition, Plaintiff emphasized that Defendants were using the wrong standard for judicial estoppel. Rather than address that issue or revise their arguments, Defendants declined to file a reply.

*Conroy I* and then filing an entirely new case, counsel's actions are entirely inconsistent with his representations to Judge Simandle.

As to the second element, bad faith, Defendants first contend that Plaintiff "derived an unfair advantage . . . by being able to conduct discovery for over a year in one docket number before filing *Conroy II* and starting the process anew," and by putting Defendants "under an artificially faster clock in terms of discovery." (ECF No. 37-2, at 8).  The Court rejects that argument.  If Plaintiff had filed a timely motion to amend in *Conroy I*, and the Court granted that motion, Defendants would have faced similar discovery issues.

The Court is more concerned with Plaintiff's counsel's apparent attempt to circumvent the motion to amend deadline and his ostensibly false representations to Judge Simandle.  Counsel contends that he "chose to file a new complaint rather than move to amend the first complaint" for reasons of "judicial economy and to not further delay the progression of *Conroy I*." (ECF No. 41, at 6).

First, it is not "economic" for the Court, for Plaintiff to file a second case, regarding the same series of events, while the first case is still pending.  The Court must now, among other things, manage two dockets with different but related parties, resolve additional motions, and conduct additional conferences.  The Court is confident that counsel did not file *Conroy II* for the Court's convenience or to conserve the Court's limited resources.

Rather, as counsel admits, he sought to avoid filing a motion to amend because "motions often took several months to be resolved with the [C]ourt." (ECF No. 41, at 6).  Importantly, however, counsel does not contend that anything *prevented* him from filing a motion to amend in accordance with his representations to Judge Simandle.  More likely, counsel missed the motion

7

to amend deadline, lacked good cause for that failure, and did not wish to risk the denial of leave to amend in *Conroy I*.

That said, "[a]lthough ordinarily we expect a plaintiff to bring all [her] related claims in a single lawsuit, no Federal Rule of Civil Procedure required plaintiff to move for leave to amend rather than file a new complaint." *Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 2d 442, 454 (E.D.N.Y. 2014) (citing *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 90 (2d Cir. 2000) (observing that plaintiff "cannot be faulted for deciding to institute a separate suit, something it had a right to do initially")). Accordingly, the issue was not the filing of a new complaint, in and of itself. Rather, it was counsel's misrepresentations to Judge Simandle, that imply that counsel was playing "fast and loose" with the Court and acted in bad faith. *Ryan*, 81 F.3d at 361.

As to the final element, however, Defendants have not argued or shown that summary judgment is "tailored to address the harm" or that "no lesser sanction would adequately remedy the damage done by" Plaintiff's conduct. *Krystal*, 337 F.3d at 319–20. There is no guarantee that the Court would have denied Plaintiff leave to amend in *Conroy I*, and Defendants have failed to cite to any authority that shows that summary judgment is appropriate in this context. Nor is the Court aware of any case, where estoppel prevented a party from prosecuting a separate suit, that it otherwise had the right to file.

For example, a lesser sanction to remedy the "affront to the Court," could be consolidation of these cases for all purposes, with an award of attorney's fees to Defendants in connection to that consolidation. *See Danise*, 738 F. App'x at 50. Alternatively, the Court could grant Defendants additional time to complete discovery, so that they are no longer "under an artificially faster clock." (ECF No. 37-2, at 8).

8

Consequently, Defendants have failed to establish that judicial estoppel should apply, and the Court will deny summary judgment on this ground.

### B. Equitable Estoppel

Next, Defendants contend that the Court should equitably estop Plaintiff from pursuing this case. The doctrine of equitable estoppel is defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights which might . . . have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." *Carlsen v. Masters, Mates & Pilots Pension Plan Tr.*, 403 A.2d 880, 882 (N.J. 1979).

Here, Defendants refer to those general legal principles and then summarily conclude that equitable estoppel should apply because the "analysis for . . . equitable estoppel mirrors the analysis posited for judicial estoppel." (ECF No. 37-2, at 11). Once again, Defendants selected the wrong framework for arguing judicial estoppel. In any event, the two doctrines have plainly different elements.

In particular, equitable estoppel requires Defendants to prove that they relied on Plaintiff's inconsistent conduct and changed their position for the worse. *Carlsen*, 403 A.2d at 882. Axiomatically, Defendants could not have relied on Plaintiff's conduct in *Conroy I*, or changed their position as result of such conduct, because Defendants were not parties to *Conroy I*. Accordingly, equitable estoppel does not apply, and the Court will deny summary judgment on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment.

An appropriate Order follows.

Dated:  December  2,  2020

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
